The Chancellor.
The bill alleges—
1st. That Elizabeth Eldridge, in the month of May, 1851, *200 made and executed her last will and testament in due form to pass real and personal estate.
2d. That at the time of her death, in J une, 1852, this will had not been in any manner revoked or cancelled by her; but that during her lifetime, without her knowledge or consent, it was surreptitiously taken, by some person unknown, from the possession of the scrivener who drew it, and with whom it had been left by Elizabeth Eldridge for safe keeping, and was destroyed or is concealed, or if not so taken, that the said will has been lost.
3d. That the complainants are devisees and legatees under that will, and that the copy-set out in the bill is a true copy of the will that was so executed by the said Elizabeth Eldridge, and is now missing.
The bill prays that the alleged paper writing may be established as the last will and testament of the said Elizabeth Eldridge.
If the several foregoing allegations are sustained by the proofs in the case, then the complainants are entitled to the decree of this court establishing the will.
Ann Hildreth, one of the complainants, is an illegitimate daughter of the decedent. Priscilla Bennet, another complainant, and the defendant, Jane Schillinger, are the legitimate children and only heirs at law of the deceased. The property in dispute was inherited by Elizabeth Eldridge from her father, John Taylor. If Elizabeth Eldridge died intestate, Ann Hildreth is cut off from all participation in the property. If the will is established, all that Jane Schillinger takes under it is a legacy of five dollars.
That Elizabeth Eldridge, in the month of May, 1851, executed a will, and that it was in due form to pass her real as well as personal estate, is placed beyond disjmte by the testimony. The three subscribing witnesses to that will have all been examined as witnesses. Their evidence agrees in every particular, and proves all the requirements of the statute as regards the execution of the paper.
*201 The contents of that will ai-e satisfactorily established. Ezekiel Stevens, the scrivener who drew the will, is one of the judges of the Court of Common Pleas of the county of Cape May. The draft of the will, which appears hy a copy produced hy Judge Stevens, and his evidence in the cause, show him to he a gentleman of intelligence and experience in such matters, and a witness upon whom the court can rely with confidence. The contents of the paper are very simple, and of a character which the witness would not be likely to forget. A legacy of five dollars is given to one daughter, and the residue of the personal estate, after the payment of the funeral expenses and debts, is equally divided between two other daughters. The real estate is given to two of the daughters. The accuracy of the witness, as to the contents of the paper, nor indeed as to any other matter to which he gives testimony, is not questioned by any counter evidence in the cause. The witness produced a paper, which he says is a copy of the will he drew. He made this copy from his recollection of the original, soon after the death of Mrs. Eldridge. He believes it to he correct, and says, if it is not word for word, it is very nearly so; the substance is the same.
Was this will ever revoked or cancelled hy Mrs. Eldridge? This is really the only contested point in the cause.
In the month of December, 1850, Mrs. Eldridge gave to Judge Stevens a memorandum by which to draw the will. ITe drew it, and sent it to her. The witness says, “In the month of May, eighteen hundred and fifty-one, she drove to my house in her carriage; Mr. Hildreth was with her; she stated to me that she had then come to get that will or writing, as she expressed herself, executed; she went with me into my office, and handed to mo the same instrument that I had written for her in December previous, and that I had put in the envelope for her; I then asked her if that will was drawn as she wished it, *202 and according to her directions, and she replied that it was, in .every respect; as the will lay before me, I then filled up the blanks with the day and the month, and the year, and put a seal to it; she then sat down, took a pen, and wrote her name to the will in the presence of myself, Andrew Ii. Stevens, and Martha S. Swain; after she had signed her name to the will, I asked her, placing my finger upon the seal, her hand being still upon the paper, if she acknowledged that to be her hand and seal; she replied that she did. Before we signed our names as the witnesses, I held up the paper which she had just signed, and asked her if she acknowledged that to be her last will and testament, and she replied that she did. "We then sat down and signed our names as witnesses to it, namely myself, my son, and my daughter, Mrs. Swain, after doing which I folded it up, and remarked, I believe it is now executed Mrs. Eldridge. She then observed to me, ‘ I wish you would now take this will, and take care of it until it is called for.’ I told her, if it was her wish, I would endeavor to take care of it for her; I took a piece of yellow paper, folded it up in letter form, and put the will inside of it, then put three wafers to it, one in the centre and one on each side, and stamped them down. I then wrote upon it a subscription in a large legible hand, ‘Mrs. Elizabeth Eldridge’s last will and testament.’ She was sitting by, and I observed to her, now, if I should die before this is called for, they will know what it contains by the subscription upon the back of it; I then took the will, and put it into a small recess in my secretary along with a number of other valuable papers. Between the time of placing it there and the time it was called for, I remember seeing it precisely where I had placed it. After the death of Mrs. Eldridge, which occurred in the latter part of June last (1852), I think, I ■yras going in the neighborhood where her executors lived, and I went to my secretary, where I had put the will, to get it, for the purpose of delivering it to the executors. *203 I took down the bundle of papers from the recess where I had deposited the will, and looked over them all for it, but it wras not there, although all the other papers belonging there were there; the will was, however, gone; I have since then made a thorough, careful, and minute search through all my papers for the will, but have not been able to find it; I am fully satisfied, from my examination, that the will is lost, spoliated, or destroyed; to the best of my knowledge and belief, no person had access to my secretary which contained that will, except myself and my family.”
He further says, “Elizabeth Eldridge never did call upon me to take that will out of my hands; she never did afterwards express any dissatisfaction in reference to that will, and I never afterwards had any conversation with her about the will; I saw her several times after the will was drawn, and had conversation with her, but she said nothing in relation to the will.”
The fair legal presumption from this evidence is, that the will drawn by Judge Stevens is the last will and testament of Elizabeth Eldridge. Unless that presumption is overcome, that will ought to be established by a decree of this court.
There is no evidence that 'Mrs. Eldridge ever made any other will than this one; there has been no intimation that she did, and there is nothing in the case to justify the suggestion. The defendants examined one witness, Jacob Schillinger, and they insist that, by him, they prove the voluntary destruction of the will in question by the decedent. Here lies the real issue between the parties.
Jacob Schillinger is the son of Jane Schillinger, who is cut off by this will with a legacy of five dollars. The bill insinuates that Jacob Schillinger surreptitiously took this will from the secretary of Mr. Stevens. It alleges that he pretended to have business with Judge Stevens, and that he went to his office when he was from home, and requested that the secretary might be opened for the *204 purpose of Ms getting Ms papers; that the secretary was unlocked by one of the judge’s family, and that Jacob SchiUinger had a full opportunity of abstracting and committing a spoliation of the will, and that he was the only person interested in its destruction that ever had the opportunity of destroying it.
The complainants did not attempt even to prove the fact upon which this insinuation was founded. Jacob SchiUinger being produced as a witness on behalf of the defendants, the complainants, upon cross-examination, questioned him as to the circumstance which excited the suspicion against him. He admits he went to Judge Stevens’ to get some papers, and he not being at home, Mrs. Stevens unlocked the secretary. He says he saw no paper there with Mrs. Eldridge’s name on it; that he did not touch or take hold of any papers in the secretary; that Mrs. Stevens looked for, but did not find them. He says he did not look for them; that he took no papers away Avith him. Judge Stevens was then recalled, and testifies that he had been drawing some papers for Jacob Schillinger.
The evidence entirely exculpates Mr. SchiUinger, and takes away every suspicion of the will having been taken away by him.
But, as I said, this witness is relied upon by the defendants to prove that the decedent herself destroyed the will. Mrs. Eldridge occupied a part of the house of this witness. After testifying to a conversation he had with her in reference to her will, he states, “ I had another conversation with her upon the same subject, about a week or two before they moved her over to Daniel Hildreth’s. This was after she had been sick and confined to the house. It was in the morning after I had taken into her room an arm-load of wood. She was scolding about my grandfather’s will, and complaining that he had left her nothing, and so on; she said that her children were all tired of her, she guessed, and that Mrs. Hildreth had *205 insulted her the night before, and that Mrs. Hildreth would be sorry for it after she was gone, or something to that effect; she was sitting upon her bed; she then got up and went to her bureau, and took something out of it, and said that there should be no such quarrelling about her will as there was about your grandfather’s, and stuck it into the stove, and then said, ‘ say nothing to uncle Daniel and aunt Nancy,’ and that was the last I ever heard of the will until I was charged with taking it in the bill filed in this cause. It was a paper that my grandmother took out of the bureau; it was yellow paper, I recollect that much about it.”
Was this the will? She did not say it was, but she certainly intended to impress the witness with the belief that it was. Was there any inducement for her to mislead him ? If she intended to destroy the will, and to make Jacob Schillinger the witness of its destruction, there was no need of her adopting this mysterious way of doing it. If she intended only to make him believe she had destroyed the will, her mysterious manner is accounted for. The witness had heard of her having made her will. He had conversed with her on a previous occasion respecting it. He had reproached her for “ cutting off” his mother, and she had told him she would destroy it. She was now in his house sick. He was performing for her acts of kindness, and it was natural she should desire to allay his irritated feelings in reference to the matter. But in order to arrive at the conclusion that this was the will, we must solve the question, how it came into her possession ? That the will was left by her with Judge Stevens for safe keeping, and that it was for that purpose, by him, locked up in his secretary, there cannot be a doubt. If it was obtained by her, it was without the consent or knowledge of Judge Stevens. She could not have obtained it herself. She was an old woman, upwards of seventy years of age, and that she, by any means could herself have procured the paper from the place where it was so securely depo *206 sited without the knowledge of some one, is not within the range of probability. Was it obtained for her by some third person ? If so, where is that individual ? Could it have been obtained by any one without the knowledge of Judge Stevens, or of some one of his family, unless in a stealthy manner and for an unlawful purpose ? The whole of the case, then, lies just here. Does the presumption of that paper’s being the will which Jacob Schillinger saw the old lady put into the stove, overcome the evidence in the cause, that the will, which she left with Ezekiel Stevens for safe keeping, was never taken out of his possession with her knowledge or consent ? I am satisfied that this was the last will and testament of Elizabeth Eldridge, and that it was never revoked or cancelled by her.
The defendants’ counsel insisted that this question ought to he submitted to a jury. The only object of directing an issue would he to inform the conscience of the court. If I had a doubt which embarrassed me in forming a judgment upon the question, such an issue would he proper. The only object would he to relieve the court from doubt. As no such doubt exists, it is my duty to decide the case upon the evidence before me.
There must he a decree establishing the will, the costs of this suit to he paid out of the estate.